UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

STEPHANIE M.,[1]

                    Plaintiff,

      v.

COMMISSIONER, Social Security
Administration,

                    Defendant.

_____

Case No. 6:20-cv-01546-MK

**OPINION
AND ORDER**

**Kasubhai,** United States Magistrate Judge:

        Plaintiff Stephanie M. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 6. For the reasons that follow, the Commissioner's final decision is REVERSED and this case is REMANDED for further proceedings.

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-government parties whose identification could affect Plaintiff's privacy.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB in May 2017, alleging a disability onset date of February 13, 2017. Tr. 10.[2] Her application was denied initially and upon reconsideration. Tr. 13. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held by video conference on November 14, 2019. *Id.*; *see also* Tr. 27–40. On January 9, 2020, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 7–18. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 49 years old on her alleged onset date. Tr. 41. She has a seventh-grade education and has past relevant work experience as a sewing machine operator. Tr. 29, 180; *see also* Tr. 18. Plaintiff alleged disability based on depression, leg pain, and stress disorder. Tr. 41; *see also* Tr. 178.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a

---

[2] "Tr." citations are to the Administrative Record. ECF No. 14.

whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since her alleged onset date. Tr. 12. At step two, the ALJ found that Plaintiff had the following severe impairments: somatic symptom disorder; borderline intellectual functioning; degenerative disc disease; status post mass excision of the right lower extremity; and obesity. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. *Id.*

The ALJ found that Plaintiff had the RFC to perform light work, with the following limitations:

> [S]he [could] occasionally climb ramps and stairs, but never ropes, ladders, or scaffolds; she [could] occasionally balance, stoop, crouch, crawl, and kneel, she should be able to sit 6 of 8 hours a day; she [could] do simple, routine tasks with a reasoning level of 1–2.

Tr. 13–14.

At step four, the ALJ found that Plaintiff was able to perform past relevant work as a semi-automatic sewing machine operator, and therefore did not proceed to step five. Tr. 18. The ALJ thus found Plaintiff not disabled within the meaning of the Act. *Id*.

## DISCUSSION

Plaintiff asserts remand is warranted for two reasons: (1) the ALJ failed to give clear and convincing reasons to reject Plaintiff's subjective symptom testimony; and (2) the ALJ erroneously evaluated the medical opinions. Both errors, Plaintiff asserts, resulted in an RFC formulation that was not supported by substantial evidence.

## I.    Subjective Symptom Testimony

Plaintiff argues that the ALJ rejected her symptom testimony for reasons that were neither clear nor convincing. Pl.'s Br. 4, ECF No. 15. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion [that] the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude

that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3] SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

During the administrative hearing, Plaintiff testified that the pain in her right leg prevents her for working and that her back that "goes out . . . all the time" after standing for about five minutes. Tr. 30, 34. She struggles to drive long distances and go grocery shopping because her "legs go[] out" due to pain. Tr. 33. Plaintiff prepares simple meals and completes basic household work, with her daughter's assistance, such as vacuuming, mopping, and dusting. Tr. 31–32.

The ALJ rejected Plaintiff's subjective symptom testimony on the grounds that while Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms,

---

[3] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p.

Plaintiff's "statements concerning the intensity, persistency and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." Tr. 14.

The Commissioner asserts that the ALJ properly rejected Plaintiff's subjective symptom testimony for three reasons: (1) the testimony contradicted her reported activities; (2) Plaintiff did not comply with treatment; and (3) her purported improvement with treatment.

### A.    Activities

As noted, the Commissioner asserts the ALJ rejected Plaintiff's testimony based on her daily activities. Def.'s Br. 2–3, ECF No. 16. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *See Orn*, 495 F.3d at 639.

The assertion fails for at least two reasons. First, the ALJ did not actually reject Plaintiff's testimony on that rationale. Rather, the ALJ's decision simply summarized Plaintiff's testimony and concluded that her "activities [were] generally consistent with the residual functional capacity." Tr. 15. Courts may not affirm an ALJ's decision based on a *post hoc* reasoning supplied by the Commissioner. *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").[4]

_____

[4] To the extent the Commissioner relies on a purported contradiction between Plaintiff's testimony at the hearing and Plaintiff's report to her physical therapist, the argument similarly fails for the same reason. *See Bray*, 554 F.3d at 1225. Plaintiff's arguments that the ALJ's other rationales for discounting her testimony are also *post hoc* rationalizations—specifically noncompliance and

Second, even if the Court were to consider the argument on the merits, the ALJ's summary of Plaintiff's daily activities failed to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see also Dodrill*, 12 F.3d at 918. As this Court has repeatedly observed, an "ALJ's mere recitation of a claimant's activities is insufficient to support the rejection of the claimant's testimony as a matter of law." *David J. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-00647-MK, 2021 WL 3509716, at *4 (D. Or. Aug. 10, 2021) (citation omitted). Therefore, Plaintiff's activities of daily living were not a clear and convincing reason to reject her testimony.

### B.    Noncompliance with Medical Treatment

The Commissioner next cites Plaintiff's noncompliance with treatment recommendations in defense of the ALJ's decision. Def.'s Br. 3, ECF No. 16. In some circumstances, noncompliance can justify discounting testimony. *See, e.g.*, *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (discounting testimony for "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (explaining that impairments that "can be controlled effectively with medication are not disabling for the purpose of determining eligibility").

However, an ALJ must also consider "any explanations that the individual may provide, or other information in the case record, that may explain" the failure to follow a treatment plan. *Orn*, 495 F.3d at 638 (quotation omitted); *see also* SSR 16-3p at *9 ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis *without*

---

improvement—are misplaced as those reasons are easily identifiable in the ALJ's decision. *See* Tr. 15.

*considering possible reasons* he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.") (emphasis added); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that conservative treatment or noncompliance "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment").

Here the ALJ noted that Plaintiff "was discharged from physical therapy after struggling to make progress largely due to noncompliance with her home exercise program" and resisted "going to a pool for pain relief due to her weight." Tr. 15. However, the ALJ failed to consider potential barriers that Plaintiff faced in following her treatment plan. *See Miranda W. v. Saul*, 509 F. Supp. 3d 1270, 1282 (D. Or. 2020) (reversing ALJ for failing to "consider whether [the claimant] had a 'good reason' for [their] reported non-compliance"). Accordingly, Plaintiff's course of treatment was not a clear and convincing reason to reject her testimony.

### C.    Improvement with Treatment

Finally, the ALJ "noted evidence that Plaintiff's condition improved with treatment[.]" Def.'s Br. 3, ECF No. 16; *see also* Tr. 15. Specifically, the Commissioner asserts that "[w]hen Plaintiff started treatment and lost weight, she reported that her pain improved and her swelling decreased." Def.'s Br. at 3 (citing to Tr. 746), ECF. No. 16. "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability[.]" *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

In April 2019, Plaintiff reported that her symptoms had "improved since her last visit" and that the swelling in her right hip and lower back had decreased. Tr. 746. Approximately a month later, she again reported improvement. Tr. 751. "The ALJ properly inferred from such evidence that [Plaintiff's] symptoms [were] not as disabling as alleged, because they improved

during periods where she was compliant with treatment[.]" *Barnes v. Berryhill*, 2017 WL 3387797, at *4 (S.D. Cal. Aug. 4, 2017) (citation and quotation marks omitted). Although Plaintiff offers an alternative interpretation of evidence, the ALJ's interpretation was rational and therefore must be upheld. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (explaining that variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record).

Plaintiff's improvement was therefore a clear and convincing reason to reject her subjective symptom testimony. Accordingly, the overall subjective symptom evaluation is supported by substantial evidence and is affirmed. *See also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that an error in an ALJ's subjective symptom analysis is harmless where an ALJ provides at least one valid reason for discounting testimony).

## II.    Medical Opinion Evidence

Plaintiff also challenges the ALJ's assessment of the medical opinion evidence. Pl.'s Br. 9–20, ECF No. 15. For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at *5867–68 (Jan. 18, 2017); *see also Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct. 28, 2020) ("For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence.").

Under the new regulations, the Commissioner is no longer required to supply "specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Allen O. v. Comm'r of Soc. Sec.*, 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or.

Nov. 5, 2020) (citing *Revisions to Rules*, 2017 WL 168819, at *5867–68). Instead, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The two most important factors in doing so are the opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). ALJs may consider other factors relating to the providers relationship with the claimant; however, they are not required to do so except in a limited number of circumstances. 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).

The parties do not dispute that the new regulations apply. They do, however, dispute the relevance of existing Ninth Circuit case law and reviewing standards in light of the new regulations.[5] *See, e.g.*, *Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021) (noting that "the Commissioner revised agency regulations to eliminate the hierarchy of medical opinions"); *Thomas S. v. Comm'r of Soc. Sec.*, 2020 WL 5494904, at *2 (W.D. Wash. Sept. 11, 2020) (noting that the "hierarchy [for treatment of medical opinion

---

[5] Plaintiff asserts that the "requirement for 'specific and legitimate' reasoning survives under the new regulations." Pl. Br. 9, ECF No. 15. The Commissioner argues that "the new regulations eliminate any semblance of hierarchy of medical opinions and state that the agency does not defer to any medical opinions[.]" Def.'s Br. 4, ECF. No. 16

evidence] underpinned the requirement in the Ninth Circuit that an ALJ must provide clear and convincing reasons to reject an uncontradicted doctor's opinion and specific and legitimate reason where the record contains contradictory opinion"). The Ninth Circuit has not yet addressed whether or how the new regulations alter the standards set forth in prior cases for rejecting medical opinion evidence. *See Robert S.*, 2021 WL 1214518, at *4.

Given the Act's broad grant of authority to the agency to adopt rules regarding "proofs and evidence," prior caselaw must yield to the Commissioner's new, permissible regulations to the extent older cases expressly relied on the former regulations. *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) ("The Act authorizes the Secretary to 'adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same' in disability cases." (citing 42 U.S.C. § 405(a)); *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005) (holding that courts should grant *Chevron* deference to regulatory changes that conflict with prior judicial precedent, unless a court's prior construction followed from the unambiguous terms of the statute and thus left no room for agency discretion); *Emilie K. v. Saul*, 2021 WL 864869, at *4 (E.D. Wash. Mar. 8, 2021) (collecting cases and observing "[m]ost District Courts to have addressed this issue have concluded that the regulations displace Ninth Circuit precedent").

The new regulations do not, however, upend the Ninth Circuit's entire body of caselaw relating to medical evidence, which remain binding on this Court. For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion. *Ghanim*, 763 F.3d at 1162; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others

that indicated continued, severe impairment"). Nor may ALJs dismiss a medical opinion without

providing a thorough, detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient
> objective findings or are contrary to the preponderant conclusions
> mandated by the objective findings does not achieve the level of
> specificity our prior cases have required, even when the objective
> factors are listed seriatim. The ALJ must do more than offer his
> own conclusions. He must set forth his own interpretations and
> explain why they, rather than the doctors', are correct.

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation

omitted). In other words, while the new regulations eliminate the previous hierarchy of medical

opinion testimony that gave special status to treating physicians, ALJs must still provide

sufficient reasoning for federal courts to engage in meaningful appellate review. *See Bunnell v.*

*Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be

forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also*

*Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)

("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in

order for us to meaningfully determine whether the ALJ's conclusions were supported by

substantial evidence."). With these principles in mind, the Court turns to the ALJ's assessment of

the medical evidence.

### A.      Collin Blattner, D.O.

Plaintiff first challenges the ALJ's assessment of the opinion of Collin Blattner, D.O.

Pl.'s Br. 10–12, ECF No. 15. Dr. Blattner concluded that Plaintiff could "stand/walk 2 hours out

of an 8-hour day, sit 6 hours in an 8-hour day with [the] need to get up every 30 minutes,

lift/carry 10 pounds occasionally and frequently, occasionally climb stairs, never climb ladders,

scaffolds or ropes, occasionally balance, and frequently stoop, crouch, knee, and crawl." Tr. 17 (citing Tr. 476–81).

The ALJ found the opinion "somewhat persuasive." *Id.* However, the ALJ rejected the doctor's exertional limitations because they "were not fully supported by exam findings," which showed that Plaintiff "exhibited full motor strength in the upper and lower extremities," and at times exhibited a normal gait. *Id.* (citing Tr. 734–35 (finding normal upper and lower resistive isometric motor testing); Tr. 738 (presenting with a "normal gait and normal balance")). These medical records were relevant to both the "supportability" and "consistency" of Dr. Blattner's opinion and the ALJ was permitted to discount the doctor's exertional limitations as a result. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2).

Plaintiff's argument that the ALJ impermissibly "cherry-picked" evidence is misplaced as variable interpretations of the evidence are insignificant where the Commissioner's interpretation is a rational reading of the record. *Burch*, 400 F.3d at 679; *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."); *see also Amaral v. Berryhill*, 707 Fed. App'x. 487, 488 (9th Cir. Dec. 21, 2017) ("[The claimant] essentially advocates for the Court to reweigh the medical evidence and arrive at a different conclusion than the ALJ; however, she has not established that the ALJ failed to support this decision with substantial evidence or committed a legal error, as required to reverse the ALJ's decision."). The ALJ's evaluation of Dr. Blattner's opinion is affirmed.

### B.    Thomas Davenport, M.D.

Plaintiff next challenges the ALJ's assessment of the opinion of Thomas Davenport, M.D. Pl.'s Br. 12–13, ECF No. 15. Dr. Davenport concluded that Plaintiff was capable of light

exertion but could "stand/walk only 2 hours out of an 8-hour day, frequently balance, occasionally climb, stoop, kneel, crouch and crawl." Tr. 16 (citing Tr. 62–64).

The ALJ found the opinion persuasive because the doctor's opinion was "supported with explanation and consistent with the moderate findings on imaging studies, obesity," and normal motor and gait one recent exams. Tr. 16. Specifically, the doctor cited Plaintiff's significant weight loss in reference to his opined limitations. Tr. 63 ("BMI is now 40, down from 52"). That conclusion, however, lacks support in the record. A review of Plaintiff's BMI totals throughout the record indicate that her BMI never dropped below fifty.[6] Thus, the ALJ's reliance on Dr. Davenport's flawed premise for his opinion lacked evidentiary support in the record. As such, the ALJ's evaluation of the opinion is not supported by substantial evidence and is therefore reversed.

### C.    Gay Wong, F.N.P.

Plaintiff asserts the ALJ erred in her assessment of the opinion of Gay Wong, F.N.P.[7] Pl.'s Br. 13–14, ECF No. 15. F.N.P. Wong served as Plaintiff's treating provider and opined that Plaintiff's "chronic conditions would make it extremely difficult for [Plaintiff] to hold a job that requires prolong[ed] sitting/standing or walking." Tr. 815.

The ALJ found F.N.P. Wong's opinion unpersuasive for two reasons: (1) the opinion was "not supported by findings and [was] inconsistent with treatment records indicating [Plaintiff]

---

[6] The Commissioner's failure to address Plaintiff's argument on this issue is effectively a concession of the issue. *See Justice v. Rockwell Collins. Inc.*, 117 F.Supp.3d 1119, 1134 (D. Or. 2015) ("if a party fails to counter an argument that the opposing party makes . . . the court may treat that argument as conceded") (citation and internal quotations and brackets omitted), *aff'd*, 720 Fed. App'x. 365 (9th Cir. 2017).

[7] The ALJ's decision incorrectly referred to F.N.P. Wong as Gary Wong. *Compare* Tr. 17 *with* Tr. 815.

was sitting a lot"; and (2) the opinion was "vague and contain[ed] no specific functional limitations." Tr. 17.

In support of the conclusion that F.N.P. Wong's opinion was inconsistent with treatment records, the ALJ cited a single treatment note in which Plaintiff reported that she had "been sitting a lot." Tr. 17 (citing Tr. 771). Facially, there is some tension between F.N.P. Wong's opinion that Plaintiff would struggle in a job that required prolonged sitting and the report that Plaintiff had in fact been "sitting a lot." Viewed in context, however, any inconsistency was immaterial as F.N.P. Wong's opinion was entirely consistent with treatment records.

For example, during the same August 2019 appointment cited by the ALJ, Plaintiff reported her knee pain was "at 8/10," explained that "[e]very time she walk[ed] she [got] a [st]abbing pain," which required her "to lean on something until the pain passes." Tr. 771. A week later, she reported that her pain increased to "9/10," and that walking caused her serious pain. *Id.* The record also contains evidence that Plaintiff had increased pain when sitting on her right side. Tr. 770. As such, the single treatment note cited by the ALJ was not sufficient to justify rejecting F.N.P. Wong's opinion that it would be difficult for Plaintiff to sit for prolonged periods of time.

As to the ALJ's second reason, the ALJ failed to explain how a lack of specific functional limitations related to the opinion's supportability and consistency as required by the regulations. In other words, the ALJ failed to identify relevant evidence that undermined F.N.P. Wong's opinion. The ALJ also failed to compare how "consistent [F.N.P. Wong's opinion was] with the evidence from other medical sources and nonmedical sources in the" record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). As such, the ALJ's rejection of the opinion based on a lack of specific functional limitations was error.

### D.    Manuel Gomes, Ph.D.

Plaintiff next challenges the ALJ's assessment of the opinion of Manuel Gomes, Ph.D. Pl.'s Br. 14–18, ECF No. 15. Dr. Gomes examined Plaintiff in December 2017 and concluded that Plaintiff was capable of performing simple and repetitive tasks, but her performance would be inconsistent due to somatic complaints; would have difficulty with detailed and complex tasks, and difficulty learning new material; would have no difficulty getting along with supervisors or coworkers; would have difficulty performing work activities on a consistent basis without special or additional instructions due to her history of learning difficulties and concrete thinking; would have difficulty maintaining attendance in the workplace and had poor sleep hygiene; would not have difficulty completing a normal workday or week due to psychiatric conditions; and would have difficulty dealing with stress due to poor stress tolerance; and would have difficulty managing changes. Tr. 440–41.

The ALJ found many of the doctor's limitations persuasive, but found the limitations relating to Plaintiff's ability to perform work activities on a consistent basis, maintaining attendance, and dealing with stress not persuasive because they were "not supported by exam findings and [were] inconsistent with the record, which reflect[ed] no mental health treatment." Tr. 17–18. The ALJ also rejected the attendance limitation based on poor sleep hygiene, explaining that "no evidence of an impairment which would prevent adequate sleep." *Id.*

As to the ALJ's reliance on the lack of mental health treatment, the Ninth Circuit has made clear that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison*, 759 F.3d at 1018 n.24 (citation and quotation marks omitted). Accordingly, this was not an appropriate reason to reject the opinion.

However, the lack of a diagnosed impairment that would interfere with Plaintiff's sleep is not consistent with the doctor's attendance limitation. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (the "more consistent a medical opinion[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be"). As such, the Court concludes that ALJ appropriately relied on that inconsistency in finding Dr. Gomes' opinion not persuasive.

### E.    Ben Kessler, Psy.D.

Finally, Plaintiff challenges the ALJ's assessment of the opinion of Ben Kessler, Psy.D. Pl.'s Br. 18–20, ECF No. 15. Dr. Kessler concluded that Plaintiff was "able to understand and remember very short, simple and routine tasks of 1–2 steps, [could] sustain concentration, persistence and pace for very short, simple instructions of 1–2 steps, [could] have occasional contact with the general public and coworkers" and required "a routine work environment." Tr. 17 (citing Tr. 51–68).

The ALJ found the opinion "not persuasive" for three reasons. First, the opinion was "not supported by sufficient explanation." Tr. 17. Second, the opinion was "inconsistent with the assessment of Dr. Gomes." *Id.* Third, the ALJ noted that Plaintiff "had no difficulty following 3-step instructions and reported no difficulties interacting with others" and that "[h]er daily activities, including driving and managing a bank account, involve[d] more than 2-step tasks." *Id.* Although Plaintiff offers an alternative interpretation of the medical record, this evidence was both relevant and appropriate for the ALJ to consider under the regulations while evaluating the persuasiveness of the opinion. *See* 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2); *see also Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational

interpretation, it is the ALJ's conclusion that must be upheld."). Accordingly, the ALJ properly evaluated Dr. Kessler's opinion.

In sum, the ALJ properly found the opinions of Drs. Blattner, Gomes, and Kessler not persuasive.[8] However, because the ALJ improperly assessed the opinions of Dr. Davenport and F.N.P. Wong, this case must be remanded.

## III.    Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the

---

[8] Because the Court concludes that the ALJ properly assessed the medical opinions of Drs. Blattner and Kessler—and because the Court found the ALJ properly discounted Plaintiff's subjective symptom testimony in Section I—the Court need not address Plaintiff's argument relating the ALJ's RFC formulation. *See* Pl.'s Br. 20–22.

Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal quotations omitted).

Here, the first requisite is met based on the ALJ's harmful legal errors. As discussed above, the ALJ erred in her assessment of Dr. Davenport's and F.N.P. Wong's opinions.

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). Here, the Court finds the record sufficiently ambiguous, making remanding for an immediate payment of benefits inappropriate. Accordingly, this case is remanded for further administrative proceedings to: (1) conduct a *de novo* review of the medical opinion evidence; (2) obtain additional VE testimony based on a reformulated RFC; and (3) conduct any further necessary proceedings. *See Burrell v. Colvin*, 75 F.3d 1133, 1141 (9th Cir. 2014).

///

///

///

## CONCLUSION

For the reasons discussed above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case is REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this <u>12th</u> day of January 2022.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge